E. Edelman and Company, Appellee, v. Emil Stromberg, Trading as E. A. Stromberg Company, Appellant.

Gen. No. 40,947.

Opinion filed June 24, 1940.

HERSHENSON & HERSHENSON, RAPPAPORT & RAPPAPORT and JAMES B. McKEON, all of Chicago, for appellant.

TELLER, LEVIT, SILVERTRUST & LEVI, of Chicago, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Defendant appeals from an injunctional order requiring it to refrain from certain unfair trade practices. The order was entered pursuant to a complaint filed by plaintiff, an amended answer by defendant and the report of a master, who recommended a decree in accordance with plaintiff's complaint.

The proceeding grew out of a bankruptcy. On November 3, 1937, an involuntary petition was filed in the United States District Court by the creditors of the Stromberg Motoscope Corporation, of which defendant E. A. Stromberg was president, asking that it be adjudged a bankrupt; appraisers were appointed by the court, a receiver appointed and leave given to solicit bids for the assets of the bankrupt; the appraisers stated that the stock in trade, including furniture, fixtures and equipment, were appraised at $6,117.24, and the "good will, consisting of unfilled orders, advertising, right to use the name 'Stromberg Motoscope Corporation' " etc., $2,500.

January 7, 1938, an order was entered reciting the solicitation of bids, notice to creditors and the sale of the assets of the bankrupt to Michael Tauber & Company for $4,500, which was approved. April 8, 1938, an order was entered directing the trustee of the bankrupt to execute, in legal form, assignments of patents, copyrights, trade-marks and a bill of sale of the good

will and right to use the name of the bankrupt corporation, Stromberg Motoscope Corporation, to Michael Tauber & Company or to whomsoever it should designate, and to date the document as of the date of the sale, that is, January 7, 1938.

It is the position of defendant that the sale on January 7, 1938, to Tauber & Company was for the physical assets only and not for copyrights, patents or good will; that the order of April 8, 1938, is void and therefore there is a break in the chain of title of plaintiff, who acquired nothing by this order and sale. Defendant says that when Tauber & Company bought the tangible assets the intangible assets were destroyed, as there can be no good will apart from physical assets; that there is no such thing as property and good will except in connection with an existing business.

We are of the opinion the sale of the assets on January 7, 1938, included the good will, and if this was not specifically mentioned, the order of April 8 confirming the sale made it clear that the good will, etc., were included in the assets sold.

Defendant says plaintiff did not obtain any of the assets or any title through Michael Tauber & Company. The report of the master includes certain documents reciting the sale to Tauber & Company of the goods, wares and merchandise of the bankrupt, "as well as the good will," including copyright of the name "Motoscope," any interest in other patents, trade-marks and copyrights, and that an order had been entered by a referee in bankruptcy ordering the trustee to execute to whomsoever Tauber & Company should designate an assignment "of said patents, copyrights and trade-marks," and that Tauber & Company had designated that said assignment be executed to Edelman and Company, a corporation, which is the plaintiff here. The master received in evidence two documents in much the same language, reciting the designation of plaintiff as the assignee of the copyright of the name "Motoscope"

and other trade-marks and copyrights. The master concluded that by virtue of these documents plaintiff acquired the good will of the bankrupt corporation and the copyright, trade-mark and interest in and to the patents described. The court sustained this conclusion, and it therefore will not be disturbed unless manifestly against the weight of the evidence. *Pasedach v. Auw,* 364 Ill. 491.

The bankruptcy proceeding from the time of its commencement, by the filing of a petition, until final settlement, is one suit. *Sandusky v. Nat. Bank,* 90 U. S. 289. Any order made may be subsequently set aside and vacated upon a proper showing. There are no terms of court in bankruptcy proceedings. Therefore, the court had the right at any time before final settlement to supplement or confirm the order of January 7, 1938, by entering the order of April 8, 1938, which clarified any doubt as to the sale of the good will, etc., of the bankrupt. Moreover, this order of April 8, did not deprive any other person of any rights or property. In *Klintz v. Marx,* 205 Ill. App. 376, it was contended that it was beyond the power of a bankruptcy court to invest the receiver with power to sell the good will and right to use the name. It was held that the circuit court could not review collaterally the proceeding in the bankruptcy court as that court could ratify and confirm a sale which had already been made. See also *E. Edelman & Co. v. Fredericks Armature Mfg. Co.,* 3 F. Supp. 973, to the effect that even though a bankruptcy court may have entered an order erroneously, its order can be questioned only in that particular court.

There was abundance of evidence that defendant was guilty of acts constituting unfair competition. After the sale of the assets of the bankrupt corporation he commenced business, taking upon himself the trade names of ''E. A. Stromberg, Not Inc.,'' and ''E. A. Stromberg Company, Not Inc.,'' and advertised in a trade journal that he, formerly president of the Strom-

berg Motoscope Corporation, was manufacturing and repairing testing instruments for the automotive trade. Also, he inserted advertisements similar to the advertisements of the old bankrupt corporation, with cuts, names of instruments, model numbers, description of each instrument and prices, all identical with those advertised by the bankrupt corporation.

In January, 1938, he received from an auto supply company an inquiry as to when their order would be filled; to this Stromberg replied that he did not have a copy of this order but if the auto company would mail a copy of it it would be taken care of without delay, thus giving the impression that he had succeeded to the business of Stromberg Motoscope Corporation. One witness testified that there were probably one hundred instances like this one. There were numerous other instances involving appliances used in connection with automobiles and advertised by Stromberg under the names ''Acitron'' and ''Zerotron,'' using the same tradenames as they appeared in advertisements by the Stromberg Motoscope Corporation.

The master recommended that defendant should have the privilege of assembling and selling all the chattels purchased by or for him within a reasonable time. The court fixed this time as on or before January 2, 1940, a period of over 8 months after entry of the decree. This indicates the disposition of the master and chancellor to treat Mr. Stromberg fairly.

The fact that he inserted the letter ''r'' in his advertisements of the word ''Motoscope'' so as to read ''Motorscope'' sufficiently proves that he intentionally attempted to reap the benefit of the good will, etc., of the Stromberg Motoscope Corporation, which had been purchased by plaintiff.

The decree restrains him from the use of certain trade names in any manner calculated to deceive the general public into the belief that he is the successor of the

former Stromberg Motoscope Corporation. The decree treats all parties fairly and it is affirmed.

*Decree affirmed.*